UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| WALTER R. ROULE, | No. C 10-04632 LB |
| Plaintiffs,<br>v. | ORDER DENYING DEFENDANT'S MOTION TO STAY WITHOUT PREJUDICE; ORDER RE DISCOVERY |
| DAVID H. PETRAEUS, DIRECTOR of the<br>CENTRAL INTELLIGENCE AGENCY, | ECF Nos. 65, 66 |
| Defendant. | |

## I. INTRODUCTION

On October 13, 2010, Plaintiff Walter R. Roule,[1] a former covert employee of the Central Intelligence Agency ("CIA"), filed this lawsuit, alleging that the CIA discriminated against him on the basis of the race and national origin of his wife, who is Asian, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq*. *See* Compl. ECF No. 1 at ¶¶ 27-30.[2]  Roule alleges specifically that his supervisor made discriminatory and defamatory statements about him based on his wife's race and national origin, retaliated against him, and denied him work and advancement opportunities on that basis. *Id.* at ¶¶ 12-26.  On May 1, 2012, the Government moved to stay the

---

[1] Plaintiff pseudonymously filed suit under the name Walter R. Roule because his real name, when associated with the his former employer and this case, is classified. *See* Declaration of Sheryl Brown-Norman (ECF No. 21-1), at 3 n.1.

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the page numbers at the bottom.

ORDER (C 10-04632 CW (LB))

1  case (including all discovery) pending completion of its deliberations as to whether to assert the
2  state secrets privilege. *See* Mot., ECF No. 66. The parties also have a discovery dispute based on
3  the Government's objection to providing discovery that "may be" protected by the states secrets
4  privilege. *See* 4/30/12 Joint Letter Brief, ECF No. 65.

5      The court held a hearing on June 21, 2012. For the reasons set forth below, the court holds that –
6  on this record – the possibility that the government "may" involve the state secrets privilege is not
7  sufficient to stay the case or discovery. The government also directs the parties to meet and confer
8  to address the Government's relevance and overbreadth objections (and thus denies without
9  prejudice Plaintiff's request that the court should reject the government's objections and order
10 discovery).

## II. ADDITIONAL FACTS

### A. Additional Relevant Procedural History

In March 2011, the district court referred this case to the undersigned for a settlement conference. *See* Minute Entry, ECF No. 18. Subsequently the court referred discovery and certain scheduling matters too. Order, ECF No. 49; Notice of Referral, ECF No. 58. The district court also established filing procedures designed to protect sensitive information in the case. *See* Order, ECF No. 31. That process allows the Government to conduct a pre-filing review. *See id.*

### B. Classified Documents and Danger From Disclosure In Case

The parties do not dispute that because Roule's "job and work assignments were covert, virtually all the documents related to his employment are classified pursuant to Executive Order No. 12,958, 60 Fed. Reg. 15315 (April 17, 1995), *as amended by* Executive Order No. 13,526, 75 Fed. Reg. 707 (Jan 5, 2010)." Motion, ECF No. 66 at 2; *see* Reply, ECF No. 72 at 5 ("Practically everything about [Plaintiff's] employment – including his name when connected to the government – is classified").[3] According to the government, that means that a failure to stay the case "may result in a significant harm to the national security." Reply, ECF No. 72 at 5. The Government points to Plaintiff's failure to follow pre-filing review procedures and attachment of classified information to a court filing on

---

[3] The government did not submit a declaration in support of these facts but Plaintiff's counsel agreed on the record that these facts are undisputed.

April 9, 2012. Simmons Suppl. Decl., Exh. 2, ECF No. 73 at ¶ 4.

## C. Discovery Disputes

Plaintiff served a request for production of documents that included his personnel file, employment evaluations, assignments, job duties, compensation files, and Defendant's policies regarding job duties. *See* Simmons Decl. Ex. 1, ECF No. 67-1; 4/30/12 Joint Letter Brief, ECF No. 65. In their joint letter about their discovery disputes, the parties disagree about whether (1) the scope of discovery should include classified information, (2) the Government should have produced privilege logs documenting the information it withheld and waived any privilege objections by failing to do so, (3) the Government should make the original documents available for inspection in their original form, (4) Plaintiff should be able to review the classified documents at a Sensitive Compartmentalized Information Facility ("SCIF"), and (5) Plaintiff's requests are too broad or irrelevant. *See* 4/30/12 Joint Letter Brief, ECF No. 65 at 1-5. As to issues 1 through 4, the Government's objection is that "classified information is not discoverable or used in civil cases such as this one," the documents "may be protected by the states secret privilege," and the government has not waived any privilege. *Id.*

## D. Government's Deliberations Regarding State Secrets

At the same time the parties filed their joint discovery letter, the Government asked to stay the case entirely until it completed its deliberations as to whether to assert the state secrets privilege. *See* Mot., ECF No. 66. The Government did not set forth a timeline for this process in its motion or accompanying declaration, and at the June 21 hearing, said only that the matter was "pending at the highest levels" of the Department of Justice. It did cite its procedures generally. *See id.* Those procedures are set forth in the next section on the legal standards that apply to its motion for a stay.

## III. LEGAL STANDARDS

### A. Stays Generally

A district court has the discretion to stay proceedings in its own court. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The Ninth Circuit has established the following framework for deciding whether a stay is appropriate:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.

ORDER (C 10-04632 CW (LB))
3

> Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Cmax, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting the same passage for the same proposition).

The Ninth Circuit reviews a district court's stay order for an abuse of discretion, though it is "somewhat less deferential" than the abuse of discretion standard in other contexts. *Lockyer*, 398 F.3d at 1105. "A district court abuses its discretion if it 'bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (alterations omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).[4]

**B. State Secrets Privilege and Procedures**

The federal judiciary has "long recognized that in exceptional circumstances, courts must act in the interest of the country's national security to prevent disclosure of state secrets, even to the point of dismissing a case entirely." *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077 (9th Cir. 2010) (*en banc*), *cert. denied,* 131 S. Ct. 2442 (2011). The state secrets evidentiary privilege was established by the Supreme court in *United States v. Reynolds,* 345 U.S. 1 (1953). Analyzing claims under the *Reynolds* privilege involves three steps:

---

[4] In his opposition to the motion to stay, Roule – citing cases where district courts have evaluated whether to stay discovery pending a defendant's motion to dismiss – argues that discovery may be stayed only when a motion is case-dispositive or dispositive on the discovery issue. *See* ECF No. 71-1 at 12-13. Those cases do stand for the proposition that "a district court may stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." *Wegner v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (*quoting Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (alteration and quotation marks omitted)); *see also Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *1 (N.D. Cal. Feb. 9, 2010) (staying discovery pending consideration of a dispositive motion); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Resource Dev. Servs.,* No. C 10-01324 JF (PVT), 2010 WL 3746290, at *1 (N.D. Cal. Sep. 18, 2010) (denying motion to stay where motion to dismiss was not dispositive). But as the Government responds, "the existence of a pending and potentially dispositive motion may be one example of a circumstance that warrants a stay, [but] it is not the only circumstance in which a stay is appropriate. Reply, ECF No. 72 at 6 (collecting cases discussing motions to stay in various circumstances). The *Cmax* factors provide the appropriate general legal framework to evaluate the motion to stay. *See* Reply, ECF no. 72 at 3 (applying this standard).

ORDER (C 10-04632 CW (LB))
4

> First, we must "ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied." Second, we must make an independent determination whether the information is privileged. . . . Finally, "the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim."

*Jeppesen*, 614 F.3d at 1080 (quoting *Al–Haramain Islamic Found., Inc. v. Bush,* 507 F.3d 1190, 1202 (9th Cir. 2007)). "The court must sustain a claim of privilege when it is satisfied, 'from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged.'" *Jeppesen*, 614 F.3d at 1081 (quoting *Reynolds,* 345 U.S. at 10). If this standard is met, the evidence is absolutely privileged, irrespective of the plaintiff's need for it. *Id.*

While the Judiciary generally defers to the Executive on foreign policy and national security matters, "the state secrets doctrine does not represent a surrender of judicial control over access to the courts." *El–Masri v. United States,* 479 F.3d 296, 312 (4th Cir. 2007). Rather, "to ensure that the state secrets privilege is asserted no more frequently and sweepingly than necessary, it is essential that the courts continue critically to examine instances of its invocation." *Ellsberg v. Mitchell,* 709 F.2d 51, 58 (D.C. Cir. 1983).

In order to invoke the state secrets privilege, the Supreme Court requires the Executive Branch to submit "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8 (footnote omitted). The formal claim must reflect the certifying official's personal judgment; responsibility for this task may not be delegated to lesser-ranked officials and must be presented in sufficient detail for the court to independently determine the validity of the claim of privilege and the scope of the evidence subject to the privilege. *Jeppesen*, 614 F.3d at 1080.

To that end, the Department of Justice ("DOJ") has procedures it follows before it will present a claim of state secrets privilege in court. *See* Mem. from the Attorney General (Sept. 23, 2009) (available at www.justice.gov/opa/documents/state-secrets-privileges.pdf), ECF No. 72-1. The DOJ invokes the state secrets privilege "only to the extent necessary to protect against the risk of significant harm to national security" and will not defend an invocation of the privilege to conceal violations of the law, prevent embarrassment to any person, organization, or agency of the United

1 States government, restrain competition, or prevent or delay the release of information that would
2 not reasonably be expected to cause significant harm to national security. *Id.* ¶ 1(B)-(C).

3      The DOJ will assert the states secrets privilege only after several levels of review. In the context
4 of this case, the Director of the CIA must determine personally that the state secrets privilege
5 applies, and the agency must request that DOJ present the claim to the court and must present the
6 DOJ with specific information specifying, among other things, the significant harms that disclosure
7 is likely to cause. *Id.* ¶ 2(A). A DOJ Assistant Attorney General then must make a formal written
8 recommendation as to "whether or not [DOJ] should defend the assertion of privilege in litigation."
9 *Id.* ¶ 2(B). The DOJ's "State Secrets Review Committee" then considers the recommendation and
10 makes its own recommendation "to the Associate Attorney General, who, through the Deputy
11 Attorney General, makes a final recommendation to the Attorney General." *Id.* ¶ 3 & n.2. The
12 Attorney General (or, in the absence or recusal of the Attorney General, the Deputy Attorney
13 General or the Acting Attorney General) must approve personally of each invocation of the state
14 secrets privilege. *Id.* ¶ 4(A).

### IV.  DISCUSSION

**A.  The Government's Motion to Stay the Proceedings**

17      The Government moves to stay the case entirely – including all discovery – until the Department
18 of Justice completes its deliberations as to whether to assert the state secrets privilege. *See* Mot.,
19 ECF No. 66 at 9. According to the Government, a stay would render the litigation more efficient
20 and would not harm Roule, but denying a stay "may result in significant harm to the national
21 security." Reply, ECF No. 72 at 4-5 (pointing to Roule's disclosure of classified information in his
22 court filings in violation of pre-filing review procedures). Roule responds that the Government has
23 not established that the indefinite stay that it seeks is appropriate. Opp'n, ECF No. 71-1 at 9. He
24 also notes that the Government has unreasonably delayed pursing the state secrets privilege. *Id.*

25      Turning to the *Cmax* factors, the court first considers "the possible damage which may result
26 from the granting of a stay." *Cmax*, 300 F.2d at 268. Roule argues that imposing a stay in this
27 litigation would "cause hardship and inequity to the Plaintiff because it will impair Plaintiffs' ability
28 to depose witnesses before they become unavailable or their memories fade, and before key

ORDER (C 10-04632 CW (LB))

6

1 documents are inadvertently lost or destroyed." ECF No. 71-1 at 18.  Also, Roule contends that he
2 is unable to assess his settlement options without additional discovery.  *Id.*  The Government
3 counters generally that Roule has not submitted "any facts to establish any of these are legitimate
4 concerns in this litigation" in that he has not shown that "the status of any witness or document will
5 change while the Government complete its deliberations . . . ."  ECF No. 72 at 4.  Also, the the
6 Government argues that Roule demonstrated that he would not be prejudiced by a stay when he
7 asked that the discovery deadlines be extended for four months.  *Id.*

8 On this record, Roule has the better argument.  First, litigation has been drawn out mostly from
9 the delays in setting up a procedure to avoid presenting sensitive information.  *See, e.g.,* ECF Nos.
10 21, 31, 36, 37 (delays from April 2011 to September 2011 surrounding Roule's response to the
11 Government's motion to dismiss).  Those obstacles delayed discovery.  Second, Roule makes the
12 persuasive common-sense argument that memories fade and witnesses become unavailable over
13 time.  Given the glacial pace of the case so far, further delays likely would harm Roule.

14 The second *Cmax* factor addresses the harm to the Government caused by going forward.  *See*
15 *Cmax*, 300 F.2d at 268.  The court appreciates that the Government has an interest in the protection
16 of classified information.  But the Government here alleges a specific harm only from the
17 inadvertent release of classified litigation.  *See* ECF No. 72 at 5.  The Government points to a
18 specific instance where Roule failed to follow the agreed-upon procedures and submitted a
19 document containing classified information to the court.  *Id.*  But in that incident, counsel for the
20 Government identified Roule's mistake promptly and removed the document before the court
21 reviewed it.  *See* Clerks Notice, ECF No. 63.  That possibility of harm is mitigated by the prefiling
22 procedures designed to prevent further disclosures.

23 A related point that the Government makes in the joint discovery letter (but not in its motion to
24 stay) is that "classified information is not discoverable or used in civil cases such as this one."
25 4/30/12 Joint Letter, ECF No. 65 at 1-5.  In support of that conclusion, the Government cites
26 Executive Order 13,526, 75 Fed. Reg. 707 (Jan 5, 2010), but the Executive Order standing alone
27 does not stand for this proposition.  The Government explained at the hearing that one reaches the
28 conclusion by reading Executive Order 13,526 and the states secrets cases together (and noting that

ORDER (C 10-04632 CW (LB))
7

1 classified information is disclosed in criminal cases, not civil cases). The Government cited no
2 cases that establish the point directly. Even if it is true, the Government said at the hearing that
3 Plaintiff was reviewing information that the Government characterized as "unclassified copies of
4 classified documents," so discovery of "classified information" apparently is possible. Also, on this
5 record, the court cannot say that the Government could not mitigate any prejudice by redacting
6 classified facts or replacing the names of covert employees with pseudonyms (as it did with Roule's
7 name).

8 What that means is that in the end, the Government's "harm" is the general denial of an
9 opportunity to complete its deliberations about whether it should invoke the states secrets privilege.
10 That alone cannot be enough. The Government points to its elaborate procedures designed to make
11 sure that it invokes the states secrets privilege – and derails ordinary civil litigation like a plaintiff's
12 employment lawsuit – only in the "exceptional circumstances" necessary to protect national security.
13 *See Mohamed*, 614 F.3d at 1077. But it provides no information about what it has done in this case.
14 For example, the court presumes (but does not know) that the CIA Director has asked the DOJ to
15 invoke the privilege. And the Government offered no information about where it is in the review
16 process or how long the process will take (except to say that it is at the DOJ's "highest levels").

17 After the revelation about the apparent review of "unclassified copies of classified information,"
18 the court tried to explore with the parties what could be reviewed and how. For example, Plaintiff's
19 counsel said that she wanted to take the "unclassified copies" with her (presumably so that she could
20 review the information with her client). The government said she could not. The court asked about
21 a protective order. The government said it was not enough. The court asked why, and the
22 government responded that it could not say anything on the record. The court asked if the
23 government could say something under seal, and the Government said it could not.

24 The takeaway from the dialogue is that the Government has said that it cannot give information,
25 it cannot say why even generally, it cannot say what is happening procedurally, it cannot give any
26 time frame for giving any answer, and it cannot say anything about anything on the record except
27 that the DOJ is reviewing things "at the highest levels" (which is some unclear level lower than the
28 AG). The court asked the AUSA whether he could identify even a time frame with an exit hatch

1   (such as "six months given the exercise of reasonable due diligence absent unforeseen
2   circumstances"), and he said that he could verify only that the review is at the "highest levels."  Put
3   another way, the Government – with no illumination about its process – asks the court to trust the
4   process blindly without any further information.  That approach is inconsistent with the court's
5   obligation to critically examine instances of the government's invocation of the states secrets
6   privilege.  *See Jeppesen*, 614 F.3d at 1080*; Ellsberg*, 709 F.2d at 58.

7   The final *Cmax* factor requires the court to consider whether staying the case would promote the
8   orderly course of justice.  The Government argues that a stay would be more efficient because, if the
9   state secrets privilege were invoked, it would "remove from the case all information within its
10  scope."  ECF No. 66 at 8.  Roule counters that the government has not met its burden to justify a
11  stay because "simply stating that it might invoke the state secret privilege does not grant it the right
12  to bring the case to a grinding halt . . . ."  ECF No. 71-1 at 21.  Again, on this record, Roule has the
13  better argument about the balancing of equities.  A general interest in pursuing deliberations –
14  absent any information about the steps taken – does not *on this record* outweigh the right of a civil
15  litigant like Roule "to a reasonably prompt determination of his civil claims . . . ."  *See, e.g.,*
16  *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).

17  The Government fails to cite, and the court has not located, any cases where a federal court
18  stayed proceedings to permit the Government more time to decide whether to invoke the states
19  secrets privilege.  Deferring to the Executive Branch on national security matters may make sense
20  when the Executive Branch invokes its privilege.  *See El–Masri,* 479 F.3d at 312.  And a stay might
21  be appropriate if the Government made a more robust showing of its process (not substance, but
22  process).  But deferring to a line AUSA's unsupported assertion that the Government "may" invoke
23  the privilege would be an abdication of judicial scrutiny entirely.  *See Jeppersen*, 614 F.3d at 1080;
24  *Ellsberg,* 709 F.2d at 58.

25  In sum, the Government's assertion that it may invoke the state secrets privilege is not enough –
26  on this record – to stay discovery.  The harms are hypothetical or speculative and conceivably
27  addressed by the filing procedures, a protective order, or redaction and pseudonyms.  The court
28  cannot conclude that an employment case will present issues so sensitive and central to national

1  security that the case is not appropriate for judicial consideration.  Moreover, the Government
2  presents no evidence of its process, and the delay suggests that the Government has not prioritized
3  its consideration of whether to invoke the states secrets privilege.  On this record, the balance of
4  equities are in Roule's favor.  The court denies the Government's motion to stay without prejudice.

**B.  Specific Disputes In The April 26, 2012 Joint Letter Brief**

As set forth in the facts section, the Government's general objection to Plaintiff's discovery requests is that the "classified information is not discoverable or used in civil cases such as this one," and the documents "may be protected by the state secrets privilege."  4/30/12 Joint Letter, ECF No. 65 at 1-5.  As discussed above and at the hearing, on this record, the court cannot see why it should impose a full stop on discovery when redactions, pseudonyms, and high-level information conceivably could result in sufficient information being produced to Roule.  The court denies without prejudice the Government's objections to discovery on this ground.

Plaintiff also argues that the Government's delay means that it has waived its right to invoke the privilege.  The court disagrees and holds that the Government has not waived its privilege by its deliberations about whether to invoke the privilege.

The parties also disagree about whether Roule's requests are relevant or overbroad.  *See id.* at 5 (devoting two paragraphs to this issue).  Their discussion (in the letter and in court) was so opaque that the court could not understand what their disputes are about.  (That is because the parties did not actually say anything.)  In light of the court's rulings, the court directs the parties to meet and confer about the objections.  If they cannot resolve their differences, they should submit a more specific joint letter.  The court observes that the requests for production do appear to ask for information that typically is produced in employment cases (like Plaintiff's own personnel records) and other information that does not have as obvious relevance.  *See* Simmons Decl. Ex. 1, Defendant's Response to Plaintiff's Amended Request for Production of Documents, ECF No. 71-1.

## V.  CONCLUSION

The court denies the Government's motion to stay the case without prejudice.  To the extent that the Government asserts that the state secrets privilege "may" excuse its discovery obligations, the court similarly denies without prejudice the Government's request to stay discovery on that ground.

1 The court denies Plaintiff's request for a finding that the Government waived the states secrets
2 privilege by its delay in the deliberative process. The court denies both parties' requests regarding
3 discovery generally because the relevance and overbreadth objections are too vague. The parties
4 should meet and confer and raise any further disputes in a new joint letter brief.

5 What this order means is that the court has preserved the status quo. There is no stay but there is
6 no further discovery (yet) because there are objections that the court cannot resolve on this record
7 and that will be resolved in a new proceeding if the parties cannot resolve their disputes themselves.

8 With the agreement of the parties, the court set a further settlement conference for Tuesday, June
9 26, 2012, at 9:30 a.m. The Government stated on the record that it will make the "unclassified
10 copies of classified information" available to Plaintiff's counsel and Roule by computer review only
11 at a DOJ-designated place. The Government disputed whether this process was necessary for Roule
12 to engage in meaningful settlement discussions but as the court pointed out, parties need to know
13 basic information before they can understand where they are in their litigation. The access is
14 important, and the court appreciates the Government's assurances that it will provide that access.

15 As to setting the settlement conference on Tuesday, the Government represented that this was
16 sufficient time for it to ensure that it had settlement authority that includes Main Justice's input.
17 Whatever that authority is, it is important that the Government undertake this process or else the
18 settlement conference will not be productive (and will waste everyone's time, including the court's).
19 If the Government cannot conclude this process by Tuesday, the court understands, but the
20 Government must contact the court's courtroom deputy to arrange a different time.

21 If they have not done so, the parties shall exchange a demand and a response in accordance with
22 the court's settlement procedures that are at ECF No. 20. The parties shall email updated settlement
23 conference statements (exchanged or confidential) with only new information to the court's orders
24 box at lbpo@cand.uscourts.gov by no later than Monday, June 25, 2012, at 4 p.m.

25 This disposes of ECF Nos. 65 and 66.

26 **IT IS SO ORDERED.**

27 Dated: _____

LAUREL BEELER

28 United States Magistrate Judge

ORDER (C 10-04632 CW (LB))
11